Redacted Version of Documents to be Sealed

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**VERSAPRO GROUP, LLC,**

      Plaintiff,

                                  Case No.: 2:18-cv-13120-AJT-DRG
                                  Hon. Arthur J. Tarnow

v.

**LINTECH GLOBAL, INC.,**

      Defendant.

---

## DEFENDANT'S MOTION TO DISMISS AND/OR COMPEL ARBITRATION

Defendant, LinTech Global, Inc. ("LinTech"), by and through its counsel, McDonald Hopkins PLC, hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) and the Federal Arbitration Act, to dismiss Plaintiff, VersaPro Group, LLC's ("VersaPro") Complaint in its entirety pursuant to the parties' prior binding agreement to arbitrate these claims. The specific grounds for this Motion is set forth in Defendant's Memorandum of Law in Support of its Motion to Dismiss and/or Compel Arbitration, filed herewith.

Pursuant to L. Civ. R. 7.1(a), counsel for LinTech sought concurrence from counsel for VersaPro, but did not obtain concurrence in the relief sought.

Respectfully submitted,

MCDONALD HOPKINS PLC

By:      /s/James J. Boutrous II
         James J. Boutrous II (P53710)
         Mark W. Steiner (P78817)
         39533 Woodward Avenue, Suite 318
         Bloomfield Hills, MI  48304
         (248) 646-5070
         jboutrous@mcdonaldhopkins.com
         msteiner@mcdonaldhopkins.com
         *Attorneys for Defendant*

Dated: November 1, 2018

Redacted Version of Documents to be Sealed

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**VERSAPRO GROUP, LLC,**

      Plaintiff,

                                Case No.: 2:18-cv-13120-AJT-DRG
                                Hon. Arthur J. Tarnow

v.

**LINTECH GLOBAL, INC.,**

      Defendant.

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS AND/OR COMPEL ARBITRATION

Redacted Version of Documents to be Sealed

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF ISSUES PRESENTED ........................................................ iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF .... v

I.      INTRODUCTION .................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 2

        A.      The Parties Relationship ................................................................. 2

        B.      Dispute Resolution in the Applicable Agreements ........................... 6

III.    ARGUMENT ......................................................................................... 9

        A.      Standard of Review ....................................................................... 9

        B.      Plaintiff Signed and Attached the JV Agreement to Its
                Complaint, Using the JV Agreement to Define the
                Relationship Between the Parties .................................................. 10

        C.      The Subject Arbitration Clauses Cover all of Plaintiff's
                Claims and the Plaintiff's Claims Should be Dismissed ............... 11

IV.     CONCLUSION ..................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Avila Group, Inc. v. Norma J. of California,*
    426 F. Supp. 537, 540 (S.D.N.Y. 1977) .......................................................11

*Chelsea Family Pharm., PLLC v. Medco Health Sols., Inc.,*
    567 F.3d 765, 775 (10th Cir. 2009) ...........................................................12

*Fazio v. Lehman Bros.,*
    340 F.3d 386, 392 (6th Cir. 2003) .......................................................10, 12

*Green v. Ameritech Corp.,*
    200 F.3d 967, 973 (6th Cir. 2000) ...........................................................13

*Hensel v. Cargill, Inc.,*
    198 F.3d 245 (6th Cir. 1999) ...................................................................13

*Highland Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,*
    350 F.3d 568, 576-77 (6th Cir. 2003)........................................................12

*Hughes Masonry Co. v. Greater Clark Cty.Sch. Bldg. Corp.,*
    F.2d 836, 839 (7th Cir. 1981) ............................................................10, 11

*Island Peak Ranc, LLC v. FIIK Inv. & Holdings, Inc.,*
    2008 WL 2673925 at *12 (D. Utah July 7, 2008)........................................11

*Javitch v. First Union Sec., Inc.,*
    315 F.3d 619, 624 (6th Cir. 2003) ............................................................10

*Shammami v. Broad St. Sec., Inc.,*
    2d 585, 588 (E.D. Mich. 2008)..................................................................13

*Shirek v. Roesink,*
    254 Mich. 105; 235 N.W. 818 (1931) .........................................................8

*Shredding, LLC v. Carloss Well Supply Co.,*
    84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) .................................................11

*Simon v. Pfizer Inc.,*
    398 F.3d 765, 775 (6th Cir. 2005) .................................................12

*State Bank of Standish v. Curry,*
    442 Mich. 76, 89-90; 500 N.W. 2d 104 (1993).................................................8

*Stout v. J.D. Byrider,*
    228 F.3d 709, 714 (6th Cir. 2000) .................................................9, 10

*United Bank & Trust v. Mortgage Guar. Ins. Corp.,*
    No. 12-11247, 2013 WL 1289271 (E.D. Mich. March. 28, 2013).................9

**Rules**

Fed. R. Civ. P. 12(b)(1).................................................2, 10

**Statutes**

9 U.S.C. § 2.................................................9

## STATEMENT OF ISSUES PRESENTED

1.   Do Plaintiff's claims arise from or relate to the parties' Joint Venture Agreement and/or Teaming Agreement, which contain express provisions compelling arbitration?

Defendant's Answer: Yes


2.   Should Plaintiff's complaint be dismissed as Plaintiff expressly agreed to arbitrate any and all claims against Defendant arising from or relating to the Parties' Joint Venture Agreement?

Defendant's Answer: Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF</u>

9 U.S.C. § 3

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

*Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999)

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)

## I.    Introduction.

This Court should dismiss Plaintiff, VersaPro Group, LLC's (hereinafter referred to as "Plaintiff" or "VersaPro"), complaint against Defendant, LinTech Global, Inc. (hereinafter referred to as "Defendant" or "LinTech") on the basis that the parties' have an express agreement to arbitrate such claims.   Plaintiff's Complaint alleges that Plaintiff and LinTech had a 'partnership' agreement whereby the two parties had an agreement to pool resources in pursuit of joint opportunities in the defense contracting industry.  The <u>only</u> agreement between the parties where the parties agreed to pursue such goals (which, indisputably, is a joint venture relationship and not a partnership) is the Joint Venture Agreement (the "JV Agreement"), which Plaintiff attaches as Exhibit 1 to its Complaint. (Docket No. 1, Exhibit 1) (Exhibit A).   Contained therein, the parties agreed that

"████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████"

(Exhibit A, ¶ 25.3) (emphasis added).

While Plaintiff's Complaint attempts to plead around this requirement and simply allege a relationship that does not exist, Plaintiff must not be permitted to do so.  Again, the <u>only</u> agreement between the parties that contemplate any shared interests or resources is the Joint Venture relationship governed by the JV

Agreement.   All of Plaintiff's claims relate, generally, to obligations that the parties allegedly owe to one another through this relationship.   Accordingly, while LinTech vehemently denies any liability, because the Plaintiff's claims can <u>only</u> arise from the relationship formed through JV Agreement, pursuant to Fed. R. Civ. P. 12(b)(1) and the applicable provisions of the Federal Arbitration Act ("FAA"), this lawsuit should be dismissed.

## II.   <u>Factual Background.</u>

### A. The Parties' Relationship

LinTech provides information technology services to support certain government defense industry programs.   LinTech's relationship with VersaPro is three-fold.

First, LinTech occasionally hires VersaPro as its subcontractor to complete certain aspects of various LinTech Projects.   This general relationship is governed by an April 1, 2016 Indefinite Delivery Indefinite Quantity (IDIQ) Contract. (Exhibit B).   The contract specifically provides VersaPro "█████████ █████████ " and the scope of VersaPro's work is solely defined by █████████ █████████. (Exhibit B, ¶ 11, 5).

Second, LinTech has the option working with VersaPro as a subcontractor for bidding for specific government projects.   This relationship is governed by separate teaming agreements for the individual projects (when LinTech desires to

use VersaPro as a subcontractor for the specified project).  The March 23, 2016 Teaming Agreement (the "Teaming Agreement") attached as Exhibit C (which is an example of such an agreement for a specific project between LinTech and VersaPro) specifies that the agreement " ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ " (Exhibit C, ¶ 3.3).

Third, Lintech and VersaPro created a joint venture (LinTech-VersaPro, LLC), as governed by the JV Agreement where the parties pooled resources to pursue one particular government project, the ████████████████████ ████████████████████████████████████████████ ████████████ . (Exhibit A, ¶ 1.0).

These three relationships (and corresponding contracts) are the full extent and limit of the parties' affiliation with one another.  At no time did the parties agree to create a partnership through another contract.

Despite this, Plaintiff has generally alleged that the parties had a "partnership" through "joint venture opportunities" and "teamed opportunities" through the JV Agreement and Teaming Agreement (despite express agreements governing those relationships), as well as recognizing the general IDIQ Contract. (Docket No. 1, ¶¶ 10, 11, 15).  Even though Plaintiff recognizes that a JV

Agreement, Teaming Agreement, and IDIQ Contract exist to govern "joint venture opportunities" and "teamed opportunities," Plaintiff attempts to argue that the parties also have some general, verbal partnership. This is simply nonsensical, false, and a blatant attempt to avoid the arbitration provisions contained within both the JV Agreement and Teaming Agreement.

Plaintiff's three counts against LinTech boil down to allegations that LinTech learned certain information (specifically, the Defense Enterprise Accounting and Management System ("DEAMS") Project and VersaPro's subcontractor information) through the parties' working relationship (by application of the JV Agreement and Teaming Agreement). (Docket No. 1, ¶¶ 10, 11, 16, 17, 37). LinTech's pursuit of the DEAMS work (and alleged use of VersaPro resources and subcontractors in doing so), makes up Plaintiff's entire claim for Breach of Fiduciary Duties/Violations of Uniform Partnership Act (Count I), Tortious Interference with Business Relationships (Count II), and Unjust Enrichment (Count III). Indisputably, the information, resources, and VersaPro contractors were allegedly learned by LinTech through the parties' relationship and through the specific JV Agreement and Teaming Agreement.

Notwithstanding LinTech's staunch opposition and dispute regarding the validity of these claims, the claims clearly "relate to" the parties' JV Agreement and/or Teaming Agreement, as Plaintiff has alleged that at least some of the

knowledge gained (or resources used) related to the JV Agreement and Teaming Agreement. (Docket No. 1, ¶¶ 10, 12, 13, 14).

Further, the JV Agreement is the <u>only</u> agreement to which the Plaintiff can point that demonstrates that VersaPro and LinTech would "work together to source, bid on, and secure IT services contracts for profit . . . ." (Docket No. 1, ¶ 24). Outside of the JV Agreement, VersaPro was merely a subcontractor to LinTech (through the Teaming Agreement and/or IDIQ Contract) to which LinTech did not share its resources and owed VersaPro virtually no obligations.[1] Accordingly, all of the Plaintiff's claims (to the extent it claims it improperly used shared resources) "relate to" the JV Agreement such that Plaintiff is bound to arbitrate the instant claims against LinTech.

To the extent VersaPro claims damages as a result of any of LinTech's alleged actions – it is that VersaPro should have been made a subcontractor on the DEAMS Project through a Teaming Agreement (which Defendant factually and legally disputes). Accordingly, the terms of the Teaming Agreement also "relate to" the subject dispute.

---

[1] The Teaming Agreement specifies that ██████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████" (Exhibit C, ¶ 3.2) and <u>only</u> VersaPro agreed "████████████
████████████████████" (Exhibit C, ¶ 1.1).

**B. Dispute Resolution in the Applicable Agreements**

The JV Agreement contains the following clause that requires arbitration of the instant dispute:



(Exhibit A, ¶ 25.3, emphasis added).  Section 22 of the JV Agreement regards the safekeeping of confidential information and is inapplicable to the instant dispute. (Exhibit A, ¶ 22.0).  Thus, the JV Agreement expressly requires that all disputes that "relate to" the JV Agreement are subject to binding arbitration pursuant to the Rules of the American Arbitration Association.

The Teaming Agreement also contains an arbitration provision.  Indeed, the Teaming Agreement states:



(Exhibit C, ¶ 10.0).  While this agreement explicitly (and repeatedly) contemplates an independent contractor relationship (factually rebutting Plaintiff's claims), if the Court deems that the Plaintiff's claims <u>relate to</u> this relationship (and any information learned or gleaned therefrom), or specifically Plaintiff's claim that it should have been made a subcontractor for the DEAMS Project through a Teaming Agreement and claims damages as a result – this Court must dismiss this lawsuit and compel Plaintiff to submit its claims to arbitration.

Finally, the IDIQ Contract (which governs the parties' general relationship outside of specific Teaming Agreements and the JV Agreement) states that it is subject to LinTech's Time-And-Material, Labor-Hour General Provisions (revision Date August 2011) or LinTech's Firm-Fixed-Price General Provisions (Revision Date August 2011).  (Exhibit B, ¶ 4.A).  Contained therein, both General Provisions state:





(Exhibit D, ¶ GP-5). Indisputably (alternative to arbitration), this provision was also not followed by VersaPro.

Given the fact that all of the Plaintiff's claims relate to information and/or resources used through the joint venture relationship between the parties (as even Plaintiff attached the JV Agreement to its Complaint), through the contractor/subcontractor relationship through the Teaming Agreement, or otherwise relate to Plaintiff's claim that it should have been made a subcontractor under a Teaming Agreement (which LinTech emphatically disputes), this lawsuit should be submitted to arbitration pursuant to applicable federal law. Plaintiff cannot avoid the applicable arbitration provisions by simply alleging that the parties have an undefined and unwritten partnership agreement.[2]

---

[2] Indeed, it is clear that *even if* there was an undefined, unwritten agreement (which LinTech disputes), the parties' course of dealing (as demonstrated in the JV Agreement and Teaming Agreement) is to include an arbitration clause in such agreements. *See Shirek v. Roesink*, 254 Mich. 105; 235 N.W. 818 (1931); *State Bank of Standish v. Curry*, 442 Mich. 76, 89-90; 500 N.W.2d 104 (1993) ("The scope of an oral promise may also be identified by referring to the

## III.   Argument.

### A.  Standard of Review

Under the FAA, a written agreement to arbitrate between two parties engaged in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  If the Court determines that any claims pending before it properly belong in arbitration, it "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added).

The Sixth Circuit has repeatedly held that the law strongly favors arbitration. When a contract or agreement contains an arbitration clause "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Indeed, the entire reason the FAA was enacted was "to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation."  *Id.*  See also *United Bank & Trust v. Mortgage Guar. Ins. Corp.*, No. 12-11247, 2013 WL 1289271 (E.D. Mich. Mar. 28, 2013) ("The Sixth Circuit has reiterated the strong presumption in favor of arbitration on more than one occasion.").

---

facts surrounding the loan where there exists a previous course of dealing between the parties, thereby supplying some objective method by which the missing terms could be supplied.").

In determining when to dismiss or stay a proceeding pending arbitration, the Court must undertake "a limited review to determine whether the dispute is arbitrable," asking (1) whether "a valid agreement to arbitrate exists between the parties" and (2) whether "the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Furthermore, as to the second prong, courts have repeatedly held that "any doubts regarding arbitrability should be resolved **in favor of arbitration**." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (emphasis added). When the Court finds that a valid arbitration agreement exists and the parties' dispute falls within that agreement, then the Court may dismiss a plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1). As discussed herein, the Court should dismiss this case.

### B. Plaintiff Signed and Attached the JV Agreement to Its Complaint, Using the JV Agreement to Define the Relationship Between the Parties.

Plaintiff attached the signed JV Agreement to its Complaint to define the relationship between the parties. As the Sixth Circuit held in *Stout*, "[o]ne who signs a contract is presumed to know its contents, and if he has had an opportunity to read the contract which he signs he is bound by its provisions." *Stout*, 228 F.3d at 715 (citations omitted). Further, the Seventh Circuit has explained, "[to] allow (defendant) to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Hughes Masonry Co. v. Greater Clark Cty.*

*Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (citing *Avila Group, Inc. v. Norma J. of California*, 426 F. Supp. 537, 540 (S.D.N.Y. 1977)). Indeed, VersaPro cannot "rely on the contract, when it works to [its] advantage, and repudiate it when it works to [its] disadvantage." *Island Peak Ranc, LLC v. FIIK Inv. & Holdings, Inc.*, 2008 WL 2673925 at *12 (D. Utah July 7, 2008) (quoting *upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp.2d 357, 363 (N.D.N.Y. 2000)).

Accordingly, when VersaPro elected to attach and use the JV Agreement as a basis for demonstrating and supporting its claims that the parties pursued joint projects, it subjected itself to its provisions. Further, VersaPro claims LinTech should have used VersaPro as a contractor under a Teaming Agreement for the DEAMS Project. Because VersaPro claims that it should have been subjected to those benefits, it cannot simultaneously deny that a Teaming Agreement also requires arbitration of any dispute related to that agreement. Accordingly, this case should be dismissed and submitted to arbitration.

### C. The Subject Arbitration Clauses Cover all of Plaintiff's Claims and the Plaintiff's Claims should be Dismissed.

Courts must examine how broad in scope the arbitration provision is when determining the claims an arbitration clause covers. "When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of

arbitration." *Simon v. Pfizer inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (emphasis in original).   Indeed, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from considerations by the arbitrators."   *Highland Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003)(internal citations and quotations omitted).   **A plaintiff cannot "use artful pleading to avoid arbitration."** *Chelsea Family Pharm., PLLC v. Medco Health Sols., Inc.*, 567 F.3d 765, 775 (10th Cir. 2009) (emphasis added).   "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395.

For the reasons cited exhaustively above, the Plaintiff's claims are inherently derived from the multiple agreements that govern the parties' relationship.   While all three of Plaintiff's claims do not specifically reference any of the applicable agreements, Plaintiff is simply attempting to plead around the Parties' clear contractual relationship.   All three of Plaintiff's counts in its Complaint relate to either alleged information learned as a part of the parties' JV Agreement and/or Teaming Agreement, or that it should have been made a subcontractor as part of a Teaming Agreement (specifically, Plaintiff's complaint refers directly to "Joint Venture Opportunities" and "Teamed Opportunities" in defining the parties' relationship).   At its core, all of Plaintiff's claims relate to an alleged breach of the

LinTech's duties, as defined by the specific contractual Agreements (to be clear, LinTech specifically denies any wrongdoing).  For this reason, the instant lawsuit must be dismissed and this case must be submitted to arbitration.

Where all of a plaintiff's claims are subject to arbitration, a Court may dismiss, rather than stay, the lawsuit.  *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); see also *Shammami v. Broad St. Sec., Inc.*, 544 F. Supp. 2d 585, 588 (E.D. Mich. 2008) (dismissal was proper because all of plaintiff's claims belonged in arbitration).

## IV.   Conclusion.

For all of the foregoing reasons, LinTech respectfully requests this Court dismiss the instant action in favor of submitting the Plaintiff's claims to arbitration in light of the parties' agreements set forth herein.

WHEREFORE, LinTech respectfully requests this Court grant the instant Motion, dismiss this case, compel Plaintiff to submit its claims to binding arbitration, and grant such other relief this Court deems equitable and just under the circumstances

Respectfully submitted,

MCDONALD HOPKINS PLC

By:        /s/James J. Boutrous II
          James J. Boutrous II (P53710)
          Mark W. Steiner (P78817)
          39533 Woodward Avenue, Suite 318
          Bloomfield Hills, MI  48304
          (248) 646-5070
          jboutrous@mcdonaldhopkins.com
          msteiner@mcdonaldhopkins.com
          *Attorneys for Defendant*

Dated: November 1, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the E-Filing System which will send notification of such filing to all counsel of record.

Respectfully submitted,

MCDONALD HOPKINS PLC

By:        /s/James J. Boutrous II
James J. Boutrous II (P53710)
Mark W. Steiner (P78817)
39533 Woodward Avenue, Suite 318
Bloomfield Hills, MI  48304
(248) 646-5070
jboutrous@mcdonaldhopkins.com
msteiner@mcdonaldhopkins.com
*Attorneys for Defendant*

Dated: November 1, 2018